IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDON WOLOWSKI, )
)
Plaintiff, )  Civil Action No. 2: 16-cv-1538
)
v. )  United States Magistrate Judge
)  Cynthia Reed Eddy
ADRIAN FLETCHER, et al, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER[1]

Presently pending before the Court for disposition is Defendants' Motion for Summary Judgment, with brief in support (ECF Nos. 41 and 42). Plaintiff has filed a Memorandum of Law in opposition (ECF No. 62). The issues have been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 43, 44, 63, 64, and 70). For the reasons that follow, the motion will be denied.

I. **Background**

Plaintiff, Brandon Wolowski ("Plaintiff" or "Wolowski") is a *pro se* inmate who has been granted leave to proceed *in forma pauperis*. Wolowski is a pre-trial detainee being held on a number of state charges which were filed in the Court of Common Pleas of Washington County at Criminal No. CP-63-CR-0000151-2013.[2] The alleged incidents giving rise to this lawsuit occurred while Wolowski was housed at the Washington County Correctional Facility

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. See ECF Nos. 38 and 46.

[2] A review of the public docket reflects that Wolowski has been charged with criminal homicide, aggravated assault, criminal attempt - criminal homicide, and robbery - inflict serious bodily injury. Jury selection in his criminal trial is scheduled to commence on September 24, 2018, with trial scheduled to commence on October 29, 2018.

("WCCF"). Defendant movants herein are Captain Adrian Fletcher, Officer Keith Watson, Officer David Thorne, Officer Francisco Seciti, and Officer Adam Smith, all of whom are current or former officials and correction officers at WCCF.

For purposes of this Memorandum Opinion, the facts are quite simple. Wolowski alleges that he was seriously injured on October 13, 2014, when Defendants assaulted him (i) during a cell extraction, (ii) while being escorted after the cell extraction, in an elevator as he was being taken to the shower room for decontamination, (iii) in the shower area; and (iv) when he was being escorted back to a cell in the Special Housing Unit. As a result of the assaults, he suffered a broken nose, fractured right orbital-socket, several bruised ribs, a busted lip, "and a variety of bumps" across his forehead and face.

After a period of discovery, Defendants filed the instant motion for summary judgment in which they argue that they are entitled to summary judgment because "[o]n the date of the incident at issue, Plaintiff created a situation which required WCCF personnel to respond with force; however, the record of evidence clearly establishes that any force used was reasonable and appropriate under the circumstances as known to the Defendants at the time." Defs' Mot. at ¶ 4.

Plaintiff argues in response that summary judgment should not be granted to Defendants on Plaintiff's Fourteenth Amendment excessive force claim because genuine issues of material fact are in dispute.[3] The motion is fully briefed and ripe for disposition by the Court.

---

[3] Plaintiff concedes that he received appropriate and necessary medical care by WCCF's personal on October 13, 2014 and, thus, has voluntarily dismissed this claim. See Br. at 10. (ECF No. 62).

2

## II. Standard of Review

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id*. In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144,147 (3d Cir. 2007).

## III. Discussion

### A. Exhaustion

Before turning to the merits, the Court must first decide whether Wolowski has exhausted his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act of 1996 (the "PLRA"). Defendants contend that they are entitled to the entry of judgment in their favor as a matter of law because Wolowski did not comply with all requirements of WCCF's grievance system and thereby failed to exhaust all administrative remedies available to him. Plaintiff responds that the prison officials interfered with his ability to utilize the grievance system, thereby resulting in administrative remedies not being available to him.

The exhaustion requirement is mandatory and a prisoner is required to pursue all avenues of relief available to him within the prison's grievance system before bringing a federal civil rights action. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001). Prisoners who fail to fully exhaust administrative remedies may not subsequently litigate those claims in federal court. *Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir. 2000).

Moreover, the PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance / appeal system and a procedurally defective administrative grievance or appeal precludes action in federal court. *Fennell v. Cambria County Prison*, 607 F. App'x 145, 149 (3d Cir. 2015) (citing *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91 (2006) and *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2008)).

The exhaustion requirement is a "bright-line rule" and "it is beyond the power of this court − or any other - to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy, or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Likewise, as previously stated, our appellate court has been very clear that all available remedies must be exhausted prior to filing suit. *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006).

The broad rule favoring full exhaustion allows for a narrowly defined exception, an exception with potential application here. If the actions of prison officials in some fashion contributed to an inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts have recognized a clear "reluctance to invoke equitable reasons to

excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002).

Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong,* 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005); *Warman*, 49 F. App'x at 368.

In this case, Wolowski's claims are governed by WCCF's Inmate Handbook. The inmate handbook sets forth the prison's grievance procedure, including the appeal process. *See* Inmate Handbook, Version 5.6, Defs' Exh. 44-13 and Pl's Exh. 64-15. To initiate a claim, a prisoner must file a formal grievance

> within five working days of the circumstances or incident having taken place. The Housing Unit Officer and or the Shift Commander that receives the written grievance will sign off on it and forward it to the Deputy Warden for disposition. If the decision of the Deputy Warden does not resolve the grievance, [the inmate] may file an appeal to the Warden within two working days of receiving the Deputy Wardens (sic) decision. The Warden will review your appeal and return a written response to you within five working days of receiving your appeal. **ALL DECISIONS OF THE WARDEN ARE FINAL.**

*Id*. at 12.

In support of their motion, Defendants provide, *inter alia*, Affidavits from Warden Edward Strawn. (ECF Nos. 44-1 and 70-1). Warden Strawn explains that he has reviewed Wolowski's documentation as maintained by WCCF and has confirmed that Wolowski filed no grievances relating to the assaults which occurred on October 13, 2014.

In response, Wolowski has submitted his own Affidavits (Exh. 64-1 and 64-2), in which he states that he filed his first formal grievance to the Deputy Warden (which at the time was

5

Defendant Strawn) upon his return from the hospital and when the Deputy Warden failed to respond within a week's time, he filed another grievance. *See* Exhibit 64-1, at ¶¶ 46 and 47. When Wolowski did not receive a response from the Deputy Warden, he filed his first Appeal to the Warden in November 2014. *Id*. at ¶ 49. He states that because he received no response, he filed additional appeals to the Warden in November and December of 2014 and January and February of 2015 "to absolutely no avail. . . ." *Id*. at ¶ 53.

Defendants rely on the lack of any record indicating that Wolowski failed to file any grievances or appeals. Wolowski responds as follows:

> 54. And because WCCF does not provide their inmates with carbon-copy paper attached to the back of formal Grievances or Appeal Forms, or provide their inmates with any other way to authenticate that they had in fact filed both Grievance and Appeals, I made my own personal-documentation of Everything I filed after the October 13, 2014 incident.
>
> 55. Such legal documentation consisted of copies of all Grievances, Appeals and Request Slips I filed regarding my excessive force claim in October. I also had specific notes that consist of what date, time I filed said materials and particularly which officer received them.
>
> 56. Two years later, Apprx. 3 weeks after I filed this 1983 lawsuit, above legal-Documentation was "lost" from my property: On October 28, 2016.
>
> 57. I filed multiple Grievances and Appeals regarding the "lost" or "stolen" documentation, principally because I was brutally assaulted again while I was in handcuffs and shackles, and because said legal-documentation was Never returned to me, still to this day.
>
> 58. WCCF's Grievance Procedure became a problem to me at that time because even though I was receiving responses from Administration, I was not receiving responses for every Grievance I filed. And, more importantly, the new founded problems [arose] because Deputy Warden Waul or Cain or Warden Strawn was not even following their own Procedural Requirements clearly established in WCCF's Inmate Handbook pertaining to Grievance procedure.

(Amended) Affidavit of Brandon Wolowski, Exh. A (ECF No. 64-1).

Under these circumstances, the Court is reluctant to find that Plaintiff has failed to exhaust the administrative remedies available to him. It does not appear that WCCF utilizes carbon-copy forms or has a tracking procedure in place to record when grievances are submitted. Wolowski claims to have made his own copies of his submitted grievances and appeals, but that such were taken from his cell and have not been returned to him. Thus, the Court deems the absence of any record indicating receipt of any grievances or appeals filed by Wolowski pertaining to the incidents of October 13, 2014 to be of minimal probative value and is outweighed by Wolowski's own evidentiary submissions.

The Court will now turn to the merits of the summary judgment motion.

### B. Merits

As stated *supra*, Wolowski was a pretrial detainee on October 13, 2014. To establish a prima facie case under § 1983, he must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

Moreover, "[i]n order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

## Excessive force

A pretrial detainee excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, ––– U.S. ––––, 135 S.Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Under the Due Process Clause, pretrial detainees, those charged with, but not yet convicted of, a crime, must prove that law enforcement had an express intent to punish the detainee and must not have had an "alternative purpose" for the force or restriction or that the force or restriction "feels excessive in relation to the alternative purpose assigned to it." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979).

Under the Fourteenth Amendment, liability for excessive force attaches when law enforcement is found to be "deliberately indifferent" to the pretrial detainee's health or safety. Deliberate indifference occurs when law enforcement "knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The version of events offered by Defendants differs dramatically from the version offered by Wolowski, the non-movant. These contrasting facts indicate that summary judgment should not be granted at this stage. A jury could find that Defendants have misrepresented the necessity for the amount of force used to restrain Wolowski and, thus, subjected Wolowski to deliberate and excessive force in an effort to punish him in violation of his Fourteenth Amendment rights. For this reason, summary judgment will be denied.

## Qualified Immunity

Defendants also argue that they are entitled to summary judgment based upon a defense of qualified immunity as the evidence demonstrates that "there is no violation of a clearly established constitutional right." The doctrine of qualified immunity protects government

officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Based upon the facts presented here and the analysis set forth above, a jury could find that Wolowski's constitutional rights were violated. Assuming that Wolowski's constitutional rights were violated, a jury could also find that Defendants could not reasonably have believed that their conduct was lawful. Therefore, summary judgment based upon a defense of qualified immunity will be denied.

### III. Conclusion

For the reasons stated herein, the Motion for Summary Judgment will be denied as to Plaintiff's excessive force claims. Insofar as Plaintiff has voluntarily withdrawn his claims for deliberate indifference to his serious medical needs, those claims will be dismissed.

An appropriate order follows.

### ORDER OF COURT

**AND NOW** this 10th day of May, 2018, upon consideration of Defendants' motion for summary judgment, and Plaintiff's response thereto, for the reasons stated in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that summary judgment on Plaintiff's claims for excessive force is **DENIED.**

Plaintiff's claims for deliberate indifference to his serious medical needs have been voluntarily dismissed.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:  BRANDON WOLOWSKI
   187246
   Allegheny County Jail
   Pod 8E 950 Second Avenue
   Pittsburgh, PA 15219
   (via U.S. First Class Mail)

   All counsel of record
   (via ECF electronic notification)